UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) 15-MJ-4176-DHH<br>RAVEN N. KYLE, )<br>)<br>)<br>Defendant )<br>)<br>_____) | |

## ORDER ON MOTION IN LIMINE

November 3, 2015

Hennessy, M.J.

      Defendant Raven N. Kyle ("Kyle" or "Defendant") had filed two motions in this case: to dismiss the complaint on speedy trial grounds (Docket #11); and, to exclude the Draeger Alcotest 9510 breath test results as scientifically unreliable evidence (Docket #12). As to the latter, Defendant requests that this court conduct a hearing to determine the scientific reliability of the breath test which, along with other alleged facts, supported the April 16, 2015 criminal complaint charging Kyle with operating a motor vehicle while under the influence of alcohol. See generally Docket #1. The government has submitted an Opposition to each of the motions (Dockets #16 and #17), to which defendant has filed Reply briefs (Dockets #18 and #19). For the reasons that follow, Defendant's motion to dismiss on speedy trial grounds is denied. Defendant's motion for a hearing on the reliability of the breath test is allowed.

I.      **Factual and Procedural History**[1]

On May 30, 2014, Airman Jazzarae Herbert ("Herbert") was working at the gate to Hanscom Air Force Base in Bedford, MA (Docket #1-1 at ¶ 3). At approximately 10:45 P.M., she received a report of an intoxicated driver (later identified as Kyle) operating a Toyota Rav4 on the base. Id. at ¶¶ 3-4. Shortly thereafter, the Rav4 struck a parked car on Ent Road. Id. at ¶ 3. Herbert left her post to assist with the search of the driver, and upon arrival observed Kyle behind the driver's seat of the Rav4, the airbags of which had deployed. Id. at ¶ 4. Herbert saw Kyle "shouting incoherently" at a Senior Airman and Kyle's husband, and proceeded to remove Kyle from the car and search her, during which Herbert noted a strong smell of alcohol. Id.

Further verbal and physical altercation ensued, and Kyle eventually was handcuffed and transported to Squadron Headquarters Building 1725 for Standard Field Sobriety Tests, which were terminated due to Kyle's near-fall during the walk-and-turn test and inability to either stand without assistance or understand instructions. Id. at ¶ 5. It was determined that Kyle was operating her vehicle under the influence of alcohol. Id. Kyle then consented to a chemical alcohol test and was transported to the Bedford Police Station, where she provided two breath samples with BAC readings of 0.270% and 0.255%. Id. at ¶ 6.

Thereafter, officers returned Kyle to the Security Forces Headquarters Building at Hanscom AFB. Kyle was issued at least five Central Violations Bureau ("CVB") violation notices, all dated May 31, 2014, including for Operating Under the Influence of Alcohol. At approximately 1:35 a.m., following some two and one half hours in custody, Kyle was released to the custody of her husband.

---

[1] The facts that follow derive from the Affidavit of Airman Jazzarae Herbert submitted in support of the criminal complaint against Defendant (Docket #1-1), and the Air Force Supplemental Criminal Incident Report, prepared by responding officers, including Airman Herbert.

## II. Speedy Trial Challenge

Kyle moves to dismiss the complaint which applies the Assimilative Crimes Act, 18 U.S.C. § 13, and charges her with operating a motor vehicle under the influence of alcohol, in violation of the laws of the Commonwealth of Massachusetts, M.G.L. ch. 90 § 24. Kyle argues that the provisions of the speedy trial act, 18 U.S.C. § 3161(b), which require that the charging document be filed within 30 days of arrest, were "blatantly disregarded." For the reasons that follow the motion is denied.

### A. The Speedy Trial Act Does Not Apply to this Offense

First, I find that the Speedy Trial Act ("STA") is not applicable here because the crime, as assimilated under 18 U.S.C. § 13(a), is a class B misdemeanor to which the STA does not apply. The STA defines "offense" as "any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress (other than a Class B or C misdemeanor ...)." 18 U.S.C. § 3172(2); see also United States v. Sued-Jiminez, 275 F.3d 1, 8-9 (1st Cir. 2001) ("Class B and Class C misdemeanors are explicitly excluded from the [Speedy Trial] Act's coverage."). The classification of an offense depends on the maximum and mandatory minimum penalties. Under federal law, a crime is classified as Class B misdemeanor if "the maximum term of imprisonment authorized is … six months or less or more than thirty days." See 18 U.S.C. § 3559(a)(7).

Here, at first glance, the crime of Operating Under the Influence of Alcohol would appear to be a felony, by operation of the Assimilative Crimes Act. If committed on certain federal enclaves for which there is no federal law or regulation, it is prosecuted under the Assimilative Crimes Act ("ACA"), 18 U.S.C. §13(a). It provides in relevant part:

> Whoever within or upon any [federal enclave] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if

> committed or omitted within the jurisdiction of the State … in which such place is situated, by the law thereof in force at the time of such act or omission, shall be guilty of a like offense <u>and subject to like punishment</u>.

18 U.S.C. § 13(a) (emphasis added). In this case, no federal law or regulation governs the commission of Operating Under the Influence of Alcohol on Hanscom AFB. In such a case, state law, applied through the ACA, supplies the elements of the offense and the range of punishment. <u>See, e.g.</u>, <u>United States v. Garner</u>, 874 F.2d 1510, 1512 (11th Cir. 1989) (only those portions of state law defining the elements of the offense and proscribing punishment are automatically assimilated by the ACA). Massachusetts law prescribes a maximum punishment of two and one half years in the house of corrections for the offense of Operating Under the Influence. <u>See</u> M.G.L. c. 90, §24.

However, while it has been held that the ACA does not contemplate selective incorporation of state criminal law, <u>see</u> <u>United States v. Kelly</u>, 989 F.2d 162, 164 (4th Cir. 1993) (citing cases), an exception has been recognized if the state law provisions would conflict with federal policy. <u>Id.</u> (citing cases). One such policy is "the need to promote the efficiency of the federal criminal process by permitting … offenses [such as Operating Under] to be tried by a magistrate judge and not requiring all such offenses to be tried before a federal District Judge." <u>Id.</u> Thus, in <u>Kelly</u>, defendant Kelly was convicted of attempted larceny of property under $300 in value. <u>Id.</u> at 163. Maryland law, which applied through the ACA because the offense occurred at the National Institutes of Health, prescribed a maximum jail sentence of 18 months. <u>Id.</u> The magistrate judge assumed jurisdiction "with the understanding that the maximum sentence would be 12 months." <u>Id.</u> The Fourth Circuit upheld the exercise of jurisdiction, citing the policy of promoting efficiency of the federal criminal justice system. <u>Id.</u> at 164. <u>See also</u> <u>United States v. Teran</u>, 98 F.3d 831, 834-35 (5th Cir. 1996) (holding that, in case of defendant

charged with driving while intoxicated under the ACA, based on the conflict between the state punishment range allowing for imprisonment for up to two years and the federal policy of reliance on magistrate judges, an exception to the ACA's customary full assimilation of state law was permitted); <u>United States v. Talkington</u>, 32 F.Supp.2d 1262. 1264 (D. Kan. 1998) (holding that a federal court need not assimilate that portion of the state driving under the influence law providing that a third time offense is a felony since that provision conflicts with federal law governing the definition of a misdemeanor and a felony).

   It was with this established exception in mind that I assumed jurisdiction with the understanding, as relayed to Kyle at her arraignment, that the maximum potential sentence of incarceration was six months.  Permitting offenses such as Operating Under the Influence of Alcohol to be prosecuted through the CVB process before a magistrate judge plainly promotes the efficient administration of justice by this court.  The maximum sentence is within the one-year jurisdiction of magistrate judges to try cases.  <u>See</u> 18 U.S.C. §3401.  Moreover, such a maximum is within the punishment range Massachusetts prescribes for the charge of Operating Under the Influence, and therefore conforms to the ACA.  <u>See</u> <u>United States v. Harris</u>, 27 F.3d 111, 116 (4th Cir. 1994) ("Section 13(a) directs the court to determine the punishment the state prescribes for the assimilated offense and then impose 'like punishment.'"); <u>United States v. Clark</u>, 361 F.Supp. 2d 502, 507 (E.D. Va. 2005) (assimilated state statutes demarcate the lower and upper bounds of a sentence).  Finally, while I recognize that exceptions should be construed narrowly, a six month maximum jail sentence promotes fairness and consistency insofar as it is in line with certain CFR provisions which prescribe a six-month maximum jail sentence for driving while intoxicated on other federal enclaves.  <u>See, e.g.</u>, 36 C.F.R. §1.3(a), 36 C.F.R. §1001.3 (providing that driving under the influence "shall be punished by a fine as provided by

law, or by imprisonment not exceeding 6 months, or both"), 32 C.F.R. §1903.20 (providing that driving under the influence is "subject to the penalties imposed by Federal law for the commission of a Class B misdemeanor offense"); see also 32 C.F.R. §234.19 (providing the same). On the basis of the foregoing therefore, the maximum sentence here is six months' incarceration and the charge is properly classified as a Class B misdemeanor to which the STA does not apply.

### B. Kyle Was not Arrested Within the Meaning of the Speedy Trial Act

Kyle's motion to dismiss is without merit for an additional reason: the record shows that her initial contact with law enforcement did not trigger application of the Speedy Trial Act.

The Speedy Trial Act, 18 U.S.C. § 3161(b), provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." Id. (emphasis added). Section 3162(a)(1), titled "Sanctions," sets forth the consequences for a failure to comply with limitations in Section 3161(b). In relevant part it states:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) … such charge against the individual contained in such complaint shall be dismissed or otherwise dropped.

Id. Kyle claims that the OUI charge must be dismissed under the Speedy Trial Act ("STA") because the government did not file a complaint against her within thirty days of her "arrest" on May 30, 2014. Assuming arguendo that the OUI charge is an "offense" as defined by Section 3156 of the STA, Kyle's claim must nevertheless fail.

Sections 3161(b) and 3162(a)(2) must be read together. United States v. Boyd, 214 F.3d 1052, 1055 (9th Cir. 2000). "[T]o hold otherwise would provide a right without a remedy." Id. (citing United States v. Candelaria, 704 F.2d 1129, 1131 (9th Cir. 1983)). Section 3161 provides that the event that triggers the 30-day clock is an "arrest." Section 3162(a)(1), in turn, prescribes dismissal for the failure to file a charging document within 30 days of arrest "in the case of any individual against whom a complaint is filed." See id. (emphasis added). These provisions, and caselaw interpreting these provisions in analogous circumstances, establish that in order for the STA to apply, there must be an "arrest" on a "complaint."

For instance, in Boyd, Boyd was originally detained for approximately one hour and issued a violation notice for assault, a Class A misdemeanor, on an airman at McClellan Air Force Base. Boyd, 214 F.3d at 1054. Four months later, the government filed an information alleging the same offense based on the same episode. Id. Boyd moved to dismiss, arguing that in violation of Section 3161(b) more than 30 days had elapsed between her "arrest" (i.e. her one-hour detention) and the filing of the information. Id. at 1055. Affirming the magistrate judge's rejection of this argument, the Ninth Circuit held that issuance of a violation notice, even following a brief detention, cannot be considered a "complaint" issued at the time of "arrest" within the meaning of Section 3162(a). Id. It quoted the District Court of Delaware in drawing the distinction between a complaint and violation notice:

> Law enforcement officers frequently make arrests upon the basis of their non-judicial opinion that a defendant has committed a crime. The Speedy Trial Act, however, makes it clear that an arrest which is based upon the mere opinion of an enforcement officer is not sufficient to bring the Speedy Trial Act's arrest-indictment interval into play. It is only when a charge is leveled against a defendant based upon a finding of probable cause by a judicial officer that the time limitation of section 3161(b) is relevant.

Id. at 1057 (quoting United States v. Padro, 508 F. Supp. 184, 185 (D.Del. 1981)).

7

Similarly, in United States v. Graef, 31 F.3d 362, 363 (6th Cir. 1994) (discussed in Boyd), the Sixth Circuit drew the distinction between arrest in the ordinary, and constitutional, sense, and arrest for the purposes of triggering the STA. Graef was detained overnight for crashing his vehicle under the influence of alcohol through a fence enclosing a military base, and was issued a violation notice. Id. at 363. There was a 180-day delay between his overnight detention and the filing of an information. The Sixth Circuit rejected a STA challenge, finding Section 3161 inapplicable in the absence of a "complaint." Id. at 364. It concluded that the arrest trigger for Section 3161(b) is an arrest based on a complaint, or an arrest immediately followed by a complaint. Id.; see also United States v. Cardenas, 2011 WL 3023514 (N.D. Ohio 2011) (defendant who, following execution of a search warrant at his home, was transported to police department for photographing and fingerprints, and then released, was not arrested for purposes of STA).

Applying these precedents, Kyle's STA challenge is without merit. It is undisputed that on May 30, 2014, she came into contact with law enforcement officers for approximately two and a half hours as a result of her crashing her vehicle and allegedly operating it under the influence of alcohol. It is also undisputed that she was issued violation notices, and was not charged at that time, or immediately after her contact with law enforcement, by complaint. Indeed, as she asserts in support of her motion, the complaint was not filed until some six months after May 30, 2014. Whether or not her contact with officers for approximately two and one half hours on May 30, 2014 constitutes an arrest for constitutional or other purposes is of no moment. It is clear because her contact with law enforcement was not triggered by a complaint or immediately followed by issuance of a complaint that she was not "arrested" within the meaning

of the STA.  Accordingly, she cannot predicate her motion to dismiss on the events of May 30, 2014.  Her motion is denied.

### III. Admissibility of Breath Alcohol Test

Kyle also challenges the admissibility of the breath test results, arguing that a hearing is necessary to determine the scientific reliability of the Draeger Alcotest 9510 ("Alcotest 9510"), the device used for her breath test.  (Docket #12 at pp. 1-2).  Kyle's challenge concerns the Alcotest 9510's source code reliability, ethanol testing capacity, and calibration testing mechanism.  See id.  The government counters that the Alcotest 9510 is approved by the Commonwealth for purposes of completing evidentiary breath tests, a fact of which it asks this court to take judicial notice (Docket #17 at pp. 1-2).  In support, the government has provided documentation from Massachusetts Office of Alcohol Testing website listing the Alcotest 9510 as an approved breath-testing instrument.  See Docket #17; see also http://www.mass.gov/eopss/images/msp/crimelab/oat/approved-bt-4-2010.pdf (last visited October 26, 2015).

In reply, Defendant has offered correspondence dated May 4, 2015 from the Commonwealth of Massachusetts Executive Office of Public Safety and Security (Docket #19 at pp. 3-4).  The letter discusses errors involving the use of the Alcotest 9510 which reflect a "basic vulnerability in our protocol."  Id. at p. 3.  Namely, although personnel are trained "to proceed only where the instrument gives a reading of the known sample at a level between .074 and .086, the instruments in service in the Commonwealth were programmed to automatically disqualify a sample only when it fell below .070 or above .090."  Id.  Accordingly, "in a small percentage of

cases, . . . [personnel] read the test results as compliant when they should have been recognized as noncompliant." Id. at pp. 3-4.[2]

Discussion

A recent Supreme Judicial Court decision, Com. v. Camblin, 471 Mass. 639, 31 N.E.3d 1102 (2015), addressed in depth the issue now before the court, and as such, will guide the instant analysis. As here, the defendant in Camblin sought a hearing on the reliability of the alcohol testing device that was used to support his OUI conviction. See id. at 643-44.[3] The defendant argued, *inter alia*, that notwithstanding the device having passed statutory muster and been certified by the Commonwealth's Office of Alcohol Testing, see generally id. at 641-48, it presented "a new methodology that is not immune from challenge," thus warranting a hearing on its reliability. See id. at 648.

The court agreed with the defendant. It explained that despite the Legislature's power "to prescribe the rules of evidence and the methods of proof to be employed in trials in court," this power "does not mean that the reliability of every type of evidence the Legislature may deem admissible, particularly in a criminal case, is automatically insulated from challenge and review on reliability grounds." Id. at 648 (quoting Meunier's Case, 319 Mass. 421, 425, 66 N.E.2d 198 (1946); citing Com. v. Given, 441 Mass. 741, 742, 746-47 & n.9, 808 N.E.2d 788, cert. denied, 543 U.S. 948 (2004)). The court reasoned that

> [i]n the circumstances here, [ ] where the applicable statutes and regulations do not provide specific standards relating to the source code of breathalyzers, and existing case law offers no guidance about the reliability of the [device]'s methodology for measuring and analyzing the quantity of alcohol in a person's breath, the judge

---

[2] Defendant also submitted a letter from the Honorable Paul C. Dawley referencing concerns over the Alcotest 9510's reliability and consolidating all matters involving the device (Docket #19 at p. 5).

[3] Although not identical to the issues raised here, the objections in Camblin similarly concerned the device's source code, capacity to test for ethanol, and overall accuracy. See Camblin, 471 Mass. at 644.

>should have held a hearing to determine whether the source code and other challenged features of the [device] functioned in a manner that reliably produced accurate breath test results. . . . The defendant was entitled to have the merits of his challenges considered and the reliability of the [device] breath test result established before the evidence of that test result could be admitted in evidence against him.

Id. at 650-51 (citing Com. v. Shanley, 455 Mass. 752, 763 n.15, 919 N.E.2d 1254 (2010); Com. v. Sands, 424 Mass. 184, 188, 675 N.E.2d 370 (1997)). Noting the Commonwealth's responsibility to "establish the reliability of the particular breath test in each case, in light of evidence that cast doubt on its accuracy," id. at 649 (discussing Com. v. Neal, 392 Mass. 1, 14, 18–19, 464 N.E.2d 1356 (1984)), and finding that "on the paper record before us, without a hearing, it is not possible to determine that the defendant's challenges have no substantial basis," id. at 651, the Camblin court ordered a hearing on the device's reliability. Id. at 651.

In light of the case's significant factual and conceptual overlap (as well as the fact that Camblin was decided just over four months ago), I find Camblin to control this matter, and as such, that Kyle is entitled to a hearing on the reliability of the Alcotest 9510. As in Camblin, this case involves a device that enjoys statutory and regulatory approval, but the across-the-board reliability of which remains an open question. See Docket #19 at pp. 3-5. As suggested by Camblin, the Commonwealth's approval of such a device—which, it bears noting, comprises the entirety of the Government's opposition to defendant's motion—is not dispositive on the question of the device's accuracy. Rather, in light of the concerns surrounding the Alcotest 9510's reliability, it cannot be ascertained without a hearing that the device returned an accurate result on Kyle's breath test.[4] Accordingly, I find Kyle to be entitled to such a hearing.

---

[4] Finally, I note that Camblin discussed the defendant's specific challenge to the device's calibration testing mechanism, which was designed to—but did not adequately—"assist in determining whether the Alcotest accurately assesses the subject's BAC." Camblin, 471 Mass at 654. The court made clear that "[t]his is of

11

**CONCLUSION**

For all the foregoing reasons, the motion to dismiss the complaint is denied. The motion for a hearing on the reliability and accuracy of the breath alcohol testing device is granted.

    / s / David H. Hennessy
    David H. Hennessy
    United States Magistrate Judge

---

relevance because G.L. c. 90, § 24K, requires that a calibration standard analysis[ ] be performed prior to the administration of a breathalyzer test in order for [the] test to be valid." Id. (quoting Morris v. Com., 412 Mass. 861, 863 n.3, 593 N.E.2d 241 (1992)) (internal quotation marks omitted). Accordingly, the court wrote that the defendant's assertion "that the Alcotest's source code renders its calibration measurement ineffective to 'test the accuracy' of the Alcotest . . . must be resolved on remand." I note this somewhat technical point simply because the substantive concerns raised by Kyle likewise center on the Alcotest 9510's calibration mechanism. See Docket #19 at pp. 3-5.